UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

MARTY K. TUTTLE,                              )
                                             )
                Petitioner,                   )
                                             )
v.                                           )      Nos.:  3:21-CV-64-TAV-JEM
                                             )             3:18-CR-209-TAV-HBG-1
UNITED STATES OF AMERICA,                    )
                                             )
                Respondent.                   )

## MEMORANDUM OPINION

Petitioner Marty K. Tuttle has filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [Doc. 51; Case No. 3:21-cv-64 ("Civil Case"), Doc. 1].[1] The government has responded in opposition [Civil Case, Doc. 6] and petitioner has replied [Civil Case, Doc. 7]. Because, based on the record, it plainly appears that petitioner is not entitled to relief, it is not necessary to hold an evidentiary hearing,[2] and petitioner's § 2255 motion [Doc. 51; Civil Case, Doc. 1] will be **DENIED**.

I.      **Background**

Petitioner was charged in a superseding indictment with one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition,

---

[1] All docket citations refer to the underlying criminal case unless otherwise indicated.

[2] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

both in violation of 18 U.S.C. § 922(g)(1) [Doc. 14]. Petitioner proceeded to trial on these charges on February 19, 2019 [Doc. 45].

At trial, Officer Jason Pabón of the Tazewell Police Department testified that on the night of September 30, 2018, he encountered Danny King, who Officer Pabón knew had warrants for his arrest, and petitioner was a passenger in a vehicle with King [Doc. 45, pp. 37–38, 43–49]. Officer Pabón stated that, while he was patting King down, he observed petitioner reaching under the driver's seat for something [*Id.* at 50]. He stated that petitioner's left hand "was going towards the driver side under the seat, the back passenger – back seat of the driver's side" [*Id.*]. Officer Pabón testified that, although his body camera is located further down his body than his eyes, he had a good view of the passenger compartment of the vehicle [*Id.* at 49]. At that point, Officer Pabón repeatedly yelled for petitioner to "quit reaching" [*Id.* at 50–51]. Officer Pabón then shone his flashlight into the backseat of the vehicle and saw "the brown and the silver of what appeared to be the handle of a handgun" [*Id.* at 52]. Ultimately, a handgun was recovered from the vehicle, as well as a box of bullets [*Id.* at 59, 61].

On cross-examination, Officer Pabón stated that, while he was dealing with King, he was in a position to see petitioner [*Id.* at 80]. Defense counsel also questioned Officer Pabón about an incident where he was fired from working security at Lincoln Memorial University ("LMU") [*Id.* at 106–09].

Craig Lodge, an inmate at the Blount County Detention Center next testified for the government [*Id.* at 115]. Lodge testified that he was being held on federal charges

related to money laundering, narcotics, and weapons [*Id.*]. He subsequently testified regarding conversations he had with petitioner regarding petitioner's charges.

A jury ultimately found petitioner guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), but found him not guilty as to being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g) [Doc. 24]. The Court sentenced petitioner to a term of 63 months' imprisonment to be followed by 3 years' supervised release [Doc. 39].

Petitioner appealed his conviction, arguing that Officer Pabón's body camera footage should not have been admitted to the extent that it included statements by King, in violation of the Confrontation Clause [Docs. 43, 49]. However, the Sixth Circuit affirmed petitioner's conviction [Doc. 49]. Petitioner subsequently filed the instant § 2255 motion [Doc. 51].

## II. Legal Standard

The Court must vacate, set aside, or correct a prisoner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ." 28 U.S.C. § 2255. To obtain relief under § 2255 because of a constitutional error, the error must be one of "constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*,

3

507 U.S. 619, 637–38 (1993)).  A § 2255 petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence, *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006), and must clear a significantly higher hurdle than would exist on direct appeal.  *United States v. Frady*, 456 U.S. 152, 166 (1982).

Claims of ineffective assistance of counsel are cognizable under § 2255.  *Massaro v. United States*, 538 U.S. 500, 508–09 (2003).  A petitioner alleging ineffective assistance of counsel must satisfy the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1987).  First, he must identify specific acts or omissions to prove that counsel's performance was deficient and that counsel did not provide "reasonably effective assistance," *Strickland*, 466 U.S. at 687, as measured by "prevailing professional norms."  *Rompilla v. Beard*, 545 U.S. 374, 380 (2005).  Counsel is presumed to have provided effective assistance, and petitioner bears the burden of showing otherwise.  *Mason v. Mitchell*, 320 F.3d 604, 616–17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (providing that a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

Second, a petitioner must also establish "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different."  *Strickland*, 466 U.S. at 694.  "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Id*. at 691.  Because a petitioner "must satisfy *both* prongs of *Strickland* to obtain relief on an ineffectiveness claim, the inability to prove either one of

4

the prongs—regardless of which one—relieves the reviewing court of any duty to consider the other." *Nichols v. United States*, 563 F.3d 240, 249 (6th Cir. 2009) (en banc); *accord Strickland*, 466 U.S. at 697.

## III. Analysis

### A. Ground 1 – Conflict of Interest

Petitioner first argues that his counsel was ineffective due to a conflict of interest [Civil Case, Doc. 1, p. 4]. He contends that attorney Benjamin Sharp testified at his trial and worked with counsel Jonathan Moffatt, but Moffatt did not inform him of this relationship, in violation of petitioner's constitutional rights [*Id.*].

In response, the government argues that Sharp did not testify during the trial and does not work for Moffatt, but noted that Charles Brown, an investigator for the Federal Defender Service testified on petitioner's behalf [Civil Case, Doc. 6, p. 5]. Assuming petitioner is referring to Brown, he specifically testified that he was employed as an investigator for the Federal Defender Service. Moreover, his testimony benefited petitioner, and thus, petitioner has not shown that his attorney represented conflicting interests [*Id.*].

In reply, petitioner states that his claim is that Sharp actively represented Lodge, a government witness who testified against petitioner at trial, while Moffatt, working at the same office, actively represented petitioner [Civil Case, Doc. 7, pp. 6–7]. Petitioner contends that this was a conflict of interest which he should have been informed about [*Id.* at 7]. Petitioner also argues that Brown works for both Sharp and Moffatt and

testified at petitioner's trial but did not testify in petitioner's defense [*Id.* at 8]. He contends that Brown should not have been permitted to testify since Sharp and Moffatt were representing clients with adverse interests [*Id.*].

A review of the Court's docket belies petitioner's assertion that Lodge was represented by Sharp. Instead, the record in Lodge's criminal case indicates that, at his initial appearance and arraignment, Lodge was appointed a Criminal Justice Act panel attorney, rather than a Federal Public Defender [Case No. 3:18-cr-147, Doc. 201]. Specifically, on November 14, 2018, the date of Lodge's initial appearance and arraignment, the Court appointed attorney John Eldridge to represent Lodge [Case No. 3:18-cr-147, Doc. 207], and Eldridge represented Lodge through the entirety of his criminal proceedings. At no point was Lodge represented by Sharp, or any other attorney in the Federal Defender's office. Accordingly, petitioner has not shown that any conflict of interest existed, and this claim is therefore **DENIED**.

B.      **Ground 2 – Officer Pabón's Testimony**

Petitioner next argues that his trial counsel did not object to perjured testimony of Officer Pabón [Civil Case, Doc. 1, p. 5]. Specifically, petitioner contends that Officer Pabón testified that he saw petitioner reaching into the backseat of the car for a silver handgun that was in plain sight on the back floorboard, however, the handgun seized was not silver but black [*Id.*].

The government responds that petitioner's counsel effectively challenged Officer Pabón's testimony through cross examination [Civil Case, Doc. 6, pp. 5–6].

6

Accordingly, the government contends that petitioner has not rebutted the presumption that his counsel was acting strategically [*Id.* at 6–7].

Petitioner replies that counsel never questioned Officer Pabón about the color of the gun despite petitioner's request to investigate the issue [Civil Case, Doc. 7, p. 12]. Further, petitioner contends that his counsel did not adequately address Officer Pabón's credibility by addressing his termination from a prior position as a security guard at LMU [*Id.*].

First, the Court notes that petitioner's summary of Officer Pabón's testimony regarding the color of the firearm is not entirely accurate. Petitioner contends that Officer Pabón testified that he saw a silver handgun. However, the record reflects that Officer Pabón testified that, upon shining his flashlight into the backseat of the vehicle he saw "the brown and the silver of what appeared to be the handle of a handgun" [Doc. 45, p. 52]. Even assuming that, as petitioner states, the gun recovered from the vehicle was black, it is unclear what impact further questioning from defense counsel about the description of the gun would have made. Petitioner does not assert that further questioning about this matter would have resulted in a different outcome. Accordingly, the Court finds that petitioner has not established that his counsel performed deficiently in failing to highlight this inconsistency or that he suffered prejudice as a result of any deficient performance. Petitioner's claim on this ground is therefore **DENIED**.

To the extent that petitioner raises issues regarding counsel's cross-examination of Officer Pabón about his prior employment, the Court could decline to address this issue

7

because petitioner raised it for the first time in his reply brief. "'Raising [an] issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.'" *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)) (emphasis in original). Accordingly, "'[a]s a matter of litigation fairness and procedure . . . we must treat [such issues] as waived.'" *Id.* (quoting *Novosteel*, 284 F.3d at 1274) (alterations in original).

Nonetheless, the Court notes that both the Assistant United States Attorney and defense counsel questioned Officer Pabón about the circumstances of his termination from his prior employment at LMU. Specifically, on direct examination, Officer Pabón admitted that he was dismissed from his position as a campus police officer trainee for LMU [Doc. 45, pp. 39–40]. Officer Pabón explained that he was called by another officer one night to assist in an issue, and, at the time, Officer Pabón was at the volleyball coach's house [*Id.* at 40–41]. He admitted that he was asked on the phone whether he was at his apartment, and he responded yes, even though he was actually at the volleyball coach's house [*Id.* at 42]. On cross-examination Officer Pabón stated he was fired for violating a policy against fraternizing with other LMU staff members [*Id.* at 107]. He also acknowledged that, as a result of the call, the volleyball coach texted her team members about the security incident which "created a problem for the university" [*Id.*]. Defense counsel repeatedly questioned Officer Pabón regarding whether he responded to

the incident with a personal firearm, but Officer Pabón denied any recollection of doing so, although he admitted it was possible that he had a firearm if the LMU records reflected such [*Id.* at 107–08].

Although petitioner asserts that counsel should have made a more "in-depth inquiry" [Doc. 7, p. 12], he does not indicate what facts further inquiry would have uncovered or how such would have impacted the outcome of his case. The record reflects that defense counsel questioned Officer Pabón about the circumstances of his termination from LMU in an attempt to question his credibility. The Court cannot say that counsel performed deficiently in failing to continue questioning Officer Pabón about this matter for a lengthier period of time. Furthermore, because petitioner has not indicated how further questioning on this matter would have impacted the outcome of the case, he has not established any prejudice. Accordingly, petitioner's claim on this ground is **DENIED**.

### C.     Ground 3 – Confrontation Clause Violation

For the first time in his reply brief, petitioner argues that his counsel was ineffective in failing to object to the introduction of video tape evidence of the traffic stop and/or to inform petitioner of his right to confront and cross-examine King, who made statements in that video [Civil Case, Doc. 7, pp. 12–14].

As discussed *supra*, the Court could decline to address this issue because petitioner raised it for the first time in his reply brief. *See Flowers*, 513 F.3d 546 (quoting *Novosteel*, 284 F.3d at 1274). However, even considering the merits of this

claim, petitioner is not entitled to relief. In his direct appeal, petitioner argued that his Confrontation Clause rights were violated by the playing of the video tape containing King's out-of-court statements, without making King available for cross-examination [Doc. 49, p. 2]. The Sixth Circuit ultimately agreed that the video tape containing King's statements should not have been introduced [*Id.* at 7]. However, the Sixth Circuit went on to conclude that the error did not substantially affect defendant's rights [*Id.* at 8]. In making this determination, the Sixth Circuit cited to *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016), which explained that, to establish that an error affected his substantial rights, a defendant must show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different" [*Id.* at 7–8].

The *Molina-Martinez* standard the Sixth Circuit relied upon substantially mirrors the standard for a finding of prejudice in evaluating a claim of ineffective assistance of counsel in a § 2255 proceeding. *See Strickland*, 466 U.S. at 694 (the prejudice prong requires a showing of "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different"). Accordingly, a finding of prejudice in the course of this § 2255 motion would be inconsistent with the Sixth Circuit's holding in petitioner's direct appeal. And, because petitioner cannot satisfy the prejudice prong, the Court need not consider the deficient performance prong. *See Nichols*, 563 F.3d at 249. Petitioner's third claim is therefore **DENIED**.

10

## IV.    Conclusion

For the reasons stated above, the Court finds that petitioner is not entitled to relief pursuant to 28 U.S.C. § 2255, and his motion to vacate, set aside or correct sentence [Doc. 51; Civil Case, Doc. 1] will be **DENIED** and this civil action will be **DISMISSED**. A hearing is unnecessary in this case.  The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous.  Therefore, this Court will **DENY** petitioner leave to proceed *in forma pauperis* on appeal.  *See* Fed. R. App. P. 24.  Petitioner having failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability **SHALL NOT ISSUE.**  28 U.S.C. § 2253; Fed. R. App. P.  22(b).  A separate judgment will enter.

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE